IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

UNITED STATES OF AMERICA

V.  Case No. 3:11-CR-30006-002

FRANKIE JERRELL MAYBEE

## MOTION FOR JUDGMENT OF ACQUITTAL UNDER FRCrP RULE 29, OR IN THE ALTERNATIVE FOR A NEW TRIAL UNDER FRCrP RULE 33, AND MOTION FOR ARREST OF JUDGMENT UNDER FRCrP RULE 34

COMES NOW Frankie J. Maybee, Defendant, through his attorney, Chris Flanagin, of Thurman, Bishop and Flanagin, Attorneys at Law, and for the Motions states as follows:

1) Defendant was charged with one count of 18 U.S.C. 371(a)(1) Conspiracy and five counts of 18 U.S.C. 249(a)(1) Hate Crimes Acts by indictment and a jury trial was had beginning on May 17th, 2011, wherein the Defendant was found guilty on all Counts on May 19th, 2011.

2) At the close of the Government's case and subsequently at the close of Defendant's case the Defendant moved for judgment of acquittal under FRCrP 29 and both motions were denied.

3) That the Defendant hereby renews the Motion and asks this Court to find the Government failed to prove each and every element beyond a reasonable doubt and that the jury's verdict is based on insufficient evidence. In reviewing said motion the Court is to look to whether the conviction is supported by substantial evidence and not mere suspicion or a possibility of guilt. United States v. Robinson, 782 F.2d 128 (8th Cir. 1986). Further, for crimes requiring some state of mind in addition to physical conduct, the state of mind and conduct must concur. United States v. Hoffman, 06-4007 (8th Cir. 5-20-2009).

4) In the alternative the Defendant would move for a new trial based on a lack of evidence to support the verdict as the district court has broad discretion to weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict. United States v. Dodd, 391 F.3d 930 (8th Cir. 2004). It is district court's task to

weigh the evidence and the witness' credibility to determine if a miscarriage of justice may have occurred. United States v. Devries, 630 F.3d 1130 (8th Cir. 2011).

## FACTS BASED ON EVIDENCE AND TESTIMONY FROM TRIAL

On June 20th, 2011, in the early morning hours, the Defendant, Sean Popejoy, and Curtis Simer were at the Red X gas station in Alpena, Arkansas. At around 1:10 a.m. a vehicle carrying the five alleged victims of Hispanic descent arrived at pump 4 and began to fill the tank with gas while at least two to three of the alleged victims entered the store.

At this same time Sean Popejoy began using words such as "beaner", "Mexican", "go back to Mexico" based on Sean Popejoy's own testimony. Popejoy stated the Defendant made similar remarks. Brian Vital, an alleged victim and driver of the vehicle, and Jeffrey Perez both testified that they did not personally hear said remarks. Victor Sanchez, who sustained injuries in a fighting match earlier in the evening, testified he heard those words being spoken and identified the speaker as having blonde hair. The video introduced by the government does not indicate the Defendant acknowledged the alleged victims vehicle until they drove out of the parking lot.

Brian Vital finished fueling up the vehicle and put the vehicle in reverse and positioned the vehicle toward Highway 412. Brian Vital testified he knew which direction to drive back to Springdale before pulling in the gas station. Brian Vital drove the vehicle without the lights on and at an accelerated speed toward Highway 412 coming within feet of the Defendant and Simer. Popejoy took a couple steps toward the vehicle and slapped the trunk as it went by. Vital admitted there was no car blocking him from proceeding forward, and in addition that there was no reason he could not have exited the parking lot to the left of where the Defendant, Simer, and Popejoy were standing.

Within fifty seconds, the video introduced by the government shows the Defendant, Simer, and Popejoy enter the Defendant's vehicle and drive away. Subsequently authorities

were called to an accident scene wherein the vehicle Brian Vital was driving was engulfed in flames. All five occupants sustained some injuries, two sustained severe injuries. Brian Vital, Alejandro Gomez, and Victor Sanchez made statements to Officer Joel Hand with the Carroll County Sheriff's Office that night and stated they had been hit from behind by a truck which caused them to leave the road. No statement was indicated in Officer Hand's report as to any racial slurs having been made. Officer Hand also interviewed three persons who were at the Red X during that same period of time that night.

The Defendant's truck was found backed up to a fence within a couple hundred yards away from the crash scene. The Defendant was seen by witness Roger Grisham in the passenger seat of the vehicle of Jacob Fultz, who also testified he picked the Defendant, Sean Popejoy, and Curtis Simer up from nearby the scene due to the Defendant's vehicle running out of diesel. Grisham was helping with the accident at that time.

Evidence as to marks on the vehicle and the vehicle's condition after the fire was introduced along with evidence by the alleged victims and their physicians, Dr. Shannon Card, Dr. Roger Merk, and Dr. Linda Elkman, as to injuries sustained. The Government also called Dr. Diana Wright who testified that paint found on the vehicle belonging to Defendant might or might not be the paint from the vehicle owned by Brian Vital.

Brian Vital testified a truck came up behind them at a high rate of speed, started to pass them, at which time a young white man leaned out of the window yelling at them, although that he could not hear what was said. The Government introduced a metal wrench identified by Popejoy as a tool he waved outside the truck at the alleged victims. Subsequently, according to Vital, the truck got behind them and "bumped" and "nudged" them several times before his vehicle went off of the road. Victor Sanchez testified the vehicle came up behind them and began hitting their vehicle causing it to leave the roadway.

Sean Popejoy, who pled guilty the day before the trial, testified that the Defendant participated in stating racial slurs within earshot of the alleged victims. The video introduced

by the Government does indicate the Defendant acknowledged the alleged victims. Popejoy stated he believed he was wearing a shirt when the surveillance video showed he was not. Popejoy admitted he had been drinking heavily that day and could not remember all details. Popejoy testified he believed he would receive a "little bit" of a benefit by testifying against the Defendant. Popejoy admitted earlier statements made to law enforcement had been fabricated, including that one of the alleged victims had made an obscene gesture at him and that the vehicle almost hit him.

Curtis Simer testified he received an immunity agreement from the Government in return for testifying truthfully against the Defendant. Simer stated the Defendant and Popejoy picked him up that evening as he was walking down a dirt road. Simer stated they went to the Red X gas station and subsequently a vehicle with the alleged victims pulled up to pump four.

Simer stated Popejoy made a racial comment in Spanish and the Defendant told Popejoy to "shut up and get the hell over here." Simer acknowledged the Defendant previously telling him he had a hispanic girlfriend and still carried her picture, and that he had a lot of Hispanic friends. Simer testified that as the alleged victims left he was startled by how close the vehicle came and the sound of Popejoy slapping the trunk. Simer stated he was so startled he spun around causing him to hit his elbow on a horse trailer causing minor injury.

Simer stated Popejoy then began encouraging retaliation saying, "let's go get those fucking beaners." Simer stated the Defendant stated "let's go get some bitches." Simer testified they then went to the truck and caught up to the alleged victims at which time the Defendant was driving and hit the alleged victims from behind and performed a "pit" maneuver causing them to leave the roadway. Simer testified that the Defendant did not stop the truck afterward and made the statement "I hope those beaners burn and die so I don't get caught." Simer admitted he lied to law enforcement numerous times previously. Simer

stated it was to protect the Defendant. Simer admitted to going to the Defendant's house on a regular basis after the accident.

State Police Investigator Chad Hipps testified that he was allowed to pursue this case by the Carroll County Sheriff's Office. SA Hipps testified he interviewed all alleged victims and the Defendant, Simer, and Popejoy. SA Hipps testified he thought the charge may be a battery or an aggravated assault, and at the time did not know the hate crime statute existed. SA Hipps testified that he interviewed the Defendant and upon asking the Defendant how green paint that may match the alleged victim's vehicle got on a tow hook of his truck the Defendant state, "that would be kind of rough." SA Hipps testified he previously described the alleged victims vehicle leaving as it "hauled ass out of there."

The Defendant made a motion under FRCrP Rule 29 at the close of the Government's case due to insufficient evidence that any action proven taken by the Defendant was not based on perceived race or national origin, specifically that the alleged victims were Hispanic. The Defendant called no witnesses and renewed the motion at that time. The Court denied both motions.

I.   MOTION FOR JUDGMENT OF ACQUITTAL UNDER FRCrP RULE 29

The Defendant hereby respectfully moves the Court for a judgment of acquittal under FRCrP Rule 29.

### LAW

To establish a conspiracy the Government must prove: 1) the existence of an agreement between two or more people to achieve an illegal purpose, 2) the defendant's knowledge of the agreement, and 3) that the defendant knowingly joined and participated in the agreement. United States v. Crumley, 528 F.3d 1053 (8th Cir. 2008).

To establish the elements of 18 U.S.C. 249(a)(1), the Government must prove, in pertinent part, that a person whether or not acting under color of law, willfully causes bodily

injury to a person, or attempts to do so through the use of a dangerous weapon, because of a persons perceived race, color, religion, or national origin of the person violates said offense. 18 U.S.C. 249 (a)(1).

FRCrP Rule 29(a) provides "after the government closes its evidence or at the close of all evidence, the Court must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. Rule Crim. Proc. 29 (a), also citing United States v. Espinosa, 585 F.3d 418 (8th Cir. 2009). The evidence is to be viewed in a light most favorable to the guilty verdict, resolving all evidentiary conflicts in favor of the government, accepting all reasonable inferences supported by the evidence. *Id at 423.*

## ARGUMENT

In this case there is insufficient evidence to prove any acts of the Defendant or injury because of the Defendant was because of the race or national origin of the alleged victims. The surveillance video from the Red X gas station does not indicate the Defendant ever acknowledged the alleged victims. Further, none of the alleged victims ever testified the Defendant made any kind of racial slur or any overt action toward them.

The Government's witness, Curtis Simer, who received immunity for his testimony, actually testified the Defendant reprimanded Popejoy upon Simer and the Defendant hearing Popejoy addressing the alleged victims. Simer testified Popejoy said some type of derogatory word in Spanish and the Defendant told him to, "shut the hell up and get over here." Simer also verified that Popejoy slapping the trunk and the car driving in close proximity to Simer cause him to spin around injuring his arm.

Popejoy, who admitted he expected to receive some benefit for testifying, stated that he related that the alleged victims made an obscene gesture toward where the Defendant and others were standing. Popejoy later stated he lied and the obscene gesture never occurred.

Regardless, it is relevant to determining what the motivating factor was for the Defendant getting into his truck and following the alleged victims.

Popejoy also testified the Defendant's vehicle got parallel with the alleged victim's vehicle on Highway 412 going west. Popejoy stated during that time he was told by the Defendant to get back in the vehicle while he was hanging out the window with a wrench. Popejoy stated that is when he heard something hit the Defendant's truck which he believed to be a beer can. Simer admitted that he stated in earlier interviews that he had seen a beer can hit the truck.

Popejoy then testified the Defendant "bumped" the alleged victim's vehicle several times and the last time the vehicle went off of the roadway. Popejoy stated that he did not take anything said afterward by the Defendant to be a threat. The Government produced no evidence the Defendant had any history of exhibiting racism or was a part of any type of organization promoting racist views.

The Government has the burden of proving each and every element beyond a reasonable doubt. It is the Defendant's contention that even if the Government proved injury caused by the Defendant, that the evidence is insufficient to show that it was caused willfully rather than recklessly. Secondly, the evidence is insufficient to show any agreement to willfully cause injury. Lastly and most importantly, the evidence is insufficient to prove any injury was caused, or agreed upon to be caused, *because* of perceived race or national origin.

For the foregoing reasons the Defendant would respectfully ask this Court to declare a judgment of acquittal on Counts One through Six.

## II.      MOTION FOR NEW TRIAL UNDER FRCrP RULE 33

The Defendant would respectfully request this Court to order a new trial should the Court deny the Defendant's Motion for Judgment of Acquittal under FRCrP Rule 29.

## LAW

The district court has broad discretion to weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict. United States v. Dodd, 391 F.3d 930 (8th Cir. 2004). It is district court's task to weigh the evidence and the credibility of the witnesses in each case. United States v. Devries, 630 F.3d 1130 (8th Cir. 2011).

## ARGUMENT

In this case, no alleged victim ever testified the Defendant made any kind of racist remark or slur of any kind. Simer, whose credibility should be judged in light of his immunity agreement and his testimony that he had lied to law enforcement previously on numerous occasions, only stated the Defendant made the comment "spics" *after* the Defendant got into his vehicle. Simer also stated the Defendant told Popejoy to "shut the hell up and get over here" when Popejoy said what Simer believed to be a derogatory term in Spanish.

Popejoy, who previously pled guilty the day before trial, and admitted he expected to receive a benefit for his testimony, is the only witness who testified the Defendant said anything racially derogatory before the alleged victims' vehicle left the Red X gas station. Although, Popejoy admitted he had been drinking all day and could not even remember what he was wearing, in addition to stating he had never seen the Red X surveillance video. Therefore, the only two witnesses who state the Defendant ever made any racially motivated comment both received or expect to receive a benefit for their testimony and should not be found to be credible.

The Government spent an ample amount of time displaying exhibits of injuries to Jeffrey Perez and having the physicians testify to the injuries. The Government also tried to focus the jury on pictures of the burned vehicle numerous times throughout the trial. These pictures, although initially helpful for understanding, had the clear effect of inflaming the jury.

It is the Defendant's contention that any willful act to injure *because* of one's race, color, or national origin is against the great weight of the evidence and a new trial is proper absent a

judgment of acquittal. The Defendant would ask this Court to exercise its discretion and grant a new trial for the foregoing reasons.

### III. MOTION FOR ARREST OF JUDGMENT UNDER FRCrP RULE 34 AND MOTION FOR JUDGMENT OF ACQUITTAL UNDER FRCrP RULE 29 ON CONSTITUTIONAL GROUNDS.

The Defendant would respectfully ask this Court to arrest judgment under FRCrP Rule 34 and under FRCrP Rule 29 on constitutional grounds and for lack of subject matter jurisdiction.

## LAW

Under FRCrP Rule 34 (b) Arrest Judgment, upon a Defendant's motion the Court shall arrest judgment if the Court does not have jurisdiction of the charged offense. *See* Fed. Rule Crim. P. 34. In United States v. Bledsoe, 728 F.2d 1094 (8th Cir. 1984), the Court addressed 18 U.S.C. 245 which addresses federally protected activities and makes it a federal crime to willfully injure, intimidate, or interfere with, or attempts to injure, intimidate or interfere with —

(1) any person because he is or has been, or in order to intimidate such person or any other person or any class of persons from —

(A) voting or qualifying to vote, qualifying or campaigning as a candidate for elective office, or qualifying or acting as a poll watcher, or any legally authorized election official, in any primary, special, or general election;
(B) participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States;
(C) applying for or enjoying employment, or any perquisite thereof, by any agency of the United States;
(D) serving, or attending upon any court in connection with possible service, as a grand or petit juror in any court of the United States;
(E) participating in or enjoying the benefits of any program or activity receiving Federal financial assistance; or

(2) any person because of his race, color, religion or national origin and because he is or has been

(A) enrolling in or attending any public school or public college;
(B) participating in or enjoying any benefit service, privilege, program, facility or activity provided or administered by any State or subdivision thereof;

(C) applying for or enjoying employment, or any perquisite thereof, by any private employer or any agency of any State or subdivision thereof, or joining or using the services or advantages of any labor organization, hiring hall, or employment agency;
(D) serving, or attending upon any court of any State in connection with possible service, as a
(E) traveling in or using any facility of interstate commerce, or using any vehicle, terminal, or facility of any common carrier by motor, rail, water, or air;
(F) enjoying the goods, services, facilities, privileges, advantages, or accommodations of any inn, hotel, motel, or other establishment which provides lodging to transient guests, or of any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility which serves the public and which is principally engaged in selling food or beverages for consumption on the premises, or of any gasoline station, or of any motion picture house, theater, concert hall, sports arena, stadium, or any other place of exhibition or entertainment which serves the public, or of any other establishment which serves the public and (i) which is located within the premises of any of the aforesaid establishments or within the premises of which is physically located any of the aforesaid establishments, and (ii) which holds itself out as serving patrons of such establishments;

18 U.S.C. 245(a)(b)

The Bledsoe court found that said statute was constitutional under not only the Fourteenth Amendment, but also the Thirteenth Amendment, stating it is abundantly clear that under the latter Congress can reach purely private action. In that case the Defendant interfered with the victim's use of a public park because he was black. The Court explained that said interference was a badge of slavery and upheld 18 U.S.C. 245 under the Thirteenth Amendment. Bledsoe, at 1097.

In United States v. Allen, the court addressed 18 U.S.C. 245 under the Commerce Clause and the Thirteenth Amendment. The court found that violence based on race or national origin was reachable under the Commerce Clause because racial violence has been used to infringe upon federally protected rights. The court further stated that unlike the Gun Free School Zone Act declared unconstitutional under United States v. Lopez, 514 U.S. 549 (1995), and the Violence Against Women Act declared unconstitutional under United States v. Morrison, 529 U.S. 598 (2000), § 245(b)(2)(B) was enacted as "part of a comprehensive federal body of civil rights legislation aimed at eradicating discrimination found to have an adverse impact on interstate commerce." United States v. Allen, 341 F.3d 870 (9th Cir. 2003).

The Court noted that violence that interferes with the exercise of federal civil rights must be prohibited in order to protect these rights and give them meaning. As Congress noted, "it is all too clear that if racial violence directed against activities closely related to those protected by Federal antidiscrimination legislation is permitted to go unpunished, the exercise of the protected activities will be deterred." *Id.*

The court in <u>Allen</u> went on to cite the <u>Bledsoe</u> case in upholding 18 U.S.C. 245 under the Thirteenth Amendment. The court stated in <u>Bledsoe</u>, the Eighth Circuit addressed whether § 245(b)(2)(B) is constitutional under the Thirteenth Amendment. Like the court in <u>United States v. Nelson</u>, 277 F.3d 164 (2d Cir. 2002), the <u>Bledsoe</u> Court noted that the Thirteenth Amendment reaches purely private conduct. It reasoned: "Nor can there be doubt that interfering with a person's use of a public park because he is black is a badge of slavery." Id. The court then held that § 245(b) "does not exceed the scope of power granted to Congress by the Constitution." *Id.*

## ARGUMENT

In this case, the Government has chosen to proceed not under 18 U.S.C. 245, but under 18 U.S.C. 249(a)(1). As cited earlier, 18 U.S.C. 245 invokes subject matter jurisdiction for the courts by stating the federally protected activities in sections (1) (A) through (E), and (2) (A) through (F). All courts to this date have upheld 18 U.S.C. 245 for the foregoing reasons, specifically because the federal statute contains jurisdictional elements, namely the sections which define what activities are protected.

In contrast, 18 U.S.C. 249(a)(1) fails to do the same under the provision for which the Defendant in this case was charged. 18 U.S.C. 249 (a)(1) simply declares, in pertinent part, it a crime to generally commit an offense involving willful or attempted injury with a deadly weapon because of race, color, religion, or national origin. The statute fails to invoke the Congressional power to legislate the police power it attempts to assert through the statute.

The statute goes on under 18 U.S.C. 249 (a)(2)(B) to refer specifically to conduct involving a state line or national border, channel, facility, or instrumentality of interstate or foreign commerce or further whether it in some way affects interstate commerce. This is not the section for which the Defendant was charged.

Therefore, for the same exact reasons the courts as previously described have upheld 18 U.S.C. 245, 18 U.S.C. 249(a)(1) is not constitutional on its face or as applied against the Defendant in this case as Congress has exceeded its authority in enacting the statute, thus divesting the Court of jurisdiction to hear the subject matter of this case.

For the foregoing reasons the Defendant would respectfully ask this Court to arrest judgment for lack of jurisdiction under FRCrP Rule 34, or in the alternative to enter a judgment of acquittal under FRCrP Rule 29 on the ground that 18 U.S.C. 249(a)(1) is unconstitutional.

                                            Respectfully submitted,

                                            FRANKIE MAYBEE

                                              /s/Chris Flanagin

                                            Chris Flanagin, ABA # 2002127
                                            THURMAN, BISHOP & FLANAGIN
                                            P o Box 190
                                            Eureka Springs, AR 72632
                                            479-253-1234

## CERTIFICATE OF SERVICE

I, Chris Flanagin, attorney for Defendant herein, do hereby swear and affirm and on May 3, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Kyra E. Jenner, Assistant United States Attorney, 414 Parker Avenue, Ft. Smith, Arkansas 72901. Phillip A. Moon, Attorney at Law, P O Box 2217, Harrison, AR 72602

        /s/Chris Flanagin
Chris Flanagin