```
         IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF ARKANSAS
                   HARRISON DIVISION
```

**UNITED STATES OF AMERICA**                                    PLAINTIFF

      v.            No. 11-30006

**FRANKIE MAYBEE**                                              DEFENDANT

### O R D E R

NOW on this 15th day of July 2011, comes on for consideration defendant's **Motion for Judgment of Acquittal Under FRCrP Rule 29, or in the Alternative For a New Trial Under FRCrP Rule 33, and Motion for Arrest of Judgment Under FRCrP Rule 34 (Doc. 39)** and the government's response thereto (Doc. 40). The Court, being well and sufficiently advised, finds and orders as follows:

### Background

On April 6, 2011, defendant was charged in a six count indictment alleging one count of conspiring to commit a federal hate crime in violation of 18 U.S.C. § 371, and five counts of committing a federal hate crime in violation of 18 U.S.C. § 249(a).

A jury trial commenced on May 17, 2011. At the close of the government's case, defendant moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, arguing (1) that there had been insufficient evidence presented to the jury to sustain a conviction on any of the prosecuted counts; and (2) that 18 U.S.C. § 249(a) is unconstitutional -- and, thus, the Court was without jurisdiction to proceed with the trial.

The Court denied the motion to the extent it was properly advanced under Rule 29 of the Federal Rules of Criminal Procedure, concluding that there was ample evidence presented to the jury at that point from which reasonable jurors could properly conclude that guilt had been proven beyond a reasonable doubt on the prosecuted counts.

The Court then noted its belief that a challenge to the constitutionality of the statute under which the prosecutions had been brought is not properly advanced under Rule 29 of the Federal Rules of Criminal Procedure but, rather, is the type of motion which should have been made in advance of trial since its resolution would in no way depend upon the nature or quantum of proof which might be presented at trial. Moreover, the Court then expressed its doubt that the assertion of the constitutional challenge would be sufficient to deprive the Court of jurisdiction. Finally, noting that the trial had commenced with no pretrial notice of the constitutional challenge; that the jury was in the box and awaiting further proceedings; that the government had not had any time at all to address or respond to the challenge; and that the Court, itself, had not had time to properly consider the same, the Court denied the motion to the extent it was based on constitutional grounds -- without prejudice to it being renewed at a later time.

The defendant did not offer any evidence at trial and the trial proceeded. On May 18, 2011, the jury found defendant guilty on all six counts. (*See* Jury Verdict) (Doc. 37).

On June 2, 2011, defendant filed the present motion. The government filed its response on June 15, 2011, and the matter is now ripe for decision.

1. **Motion for Judgment of Acquittal** -- With respect to the motion for judgment of acquittal, defendant faces a heavy burden. The issue is whether the evidence at trial was "sufficient to support a conviction." *United States v. Peneaux*, 432 F.3d 882, 889 (8th Cir. 2005) (internal quotation marks and citation omitted). The Court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *See id.* The Court can only reverse the jury's verdict if it finds that no reasonable jury could have found defendant guilty. *See id.*

(a) The Court will not attempt to make a full recitation of all of the government's evidence presented to the jury. In short, the Court believes that the government presented substantial evidence from which a jury could (and did) conclude that, on June 20, 2010, defendant and Sean Popejoy[1] conspired to cause bodily

---

[1] On May 16, 2011, Sean Popejoy pled guilty to two counts in the indictment, and the government dismissed the remaining counts as to him. As part of his plea agreement, Mr. Popejoy testified at defendant's trial.

3

injury to five young Hispanic men because of their actual or perceived race, color, or national origin. There was evidence to show that, in carrying out their plan, defendant chased the Hispanic males in his truck on the highway; that he then deliberately used his truck to repeatedly strike the car occupied by the five Hispanic males; that his repeated actions caused the car to crash and burst into flames; and that the Hispanic males in the car were injured as a direct result of defendant's actions.

Mr. Popejoy -- and another young man who was present during the incident in question -- both testified that the actions of defendant and Mr. Popejoy were motivated by the race of the Hispanic males. In addition, the five Hispanic males involved testified about defendant's conduct on the day in question, as well the serious injuries they suffered as a result of defendant's actions.

(b) Viewing the evidence in the light most favorable to the verdict and affording all reasonable inferences flowing therefrom to the government, the Court cannot find that no reasonable jury could have found defendant guilty on the charges prosecuted. The Court believes that the evidence on all six counts was sufficient to sustain the jury's verdict and, therefore, will deny the motion for a judgment of acquittal.

2. **Motion for a New Trial** -- With respect to the motion for new trial, Federal Rule of Criminal Procedure 33(a) provides that,

4

"[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if justice so requires." A district court is granted broad discretion in considering a motion for a new trial. *See United States v. Campos*, 306 F.3d 577, 580 (8th Cir. 2002). A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Id.* (internal quotation marks and citation omitted). There are limits, however, to this authority. "Motions for new trials based on the weight of the evidence are generally disfavored," and "[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Id.*

The undersigned presided over the trial in this case and, thus, is well aware of the nature and content of the evidence presented by the government in the trial. While, as mentioned, the Court may weigh the evidence and disbelieve witnesses when evaluating a motion for new trial, the Court perceived no patent areas of sharp dispute with respect to material facts which would warrant it in doing so here. That said, however, if the Court were to find it necessary to weigh evidence and evaluate credibility of witnesses, it would conclude that the findings were not against the weight of evidence nor was the jury's apparent belief of testimony supporting the charges unreasonable, suspect or otherwise improper. It follows from the foregoing that the Court

5

does not believe the evidence in the case was against the verdict at all, and certainly not heavily so as to constitute a miscarriage of justice.  To the contrary, it is the Court's view that the weight of the evidence is clearly in favor of the jury's verdict.  The Court, therefore, will deny the motion for a new trial.

    3.  **Motion for Arrest of Judgment** –- Defendant asserts that the Court must arrest judgment under Rule 34 of the Federal Rules of Criminal Procedure because the statute involved, 18 U.S.C. § 249(a)(1), is unconstitutional, thus divesting this Court of jurisdiction to hear this case.

    (a)  Although not addressed by either party in the briefs, the Court has considered the question of whether it has the authority to address this issue at this stage in the case given that the defendant did not raise the constitutionality of 18 U.S.C. § 249(a)(1) in any pretrial motion.  Rather, defendant raised this issue for the first time during the trial after the government rested its case.

    Under Rule 12(b)(3)of the Federal Rules of Criminal Procedure, a motion alleging "a defect in the indictment or information" must be raised before trial.  Under Rule 12(e), unless good cause for the delay is shown, Rule 12(b)(3) defenses are waived if not raised before trial or by the deadline set by the Court.  The government has not argued waiver in this case.

Rule 12(b)(3)(B) provides, however, that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense."  Defendant argues that the Court lacks jurisdiction because the indictment charges an unconstitutional offense.

Further, Rule 34(a) of the Federal Rules of Criminal Procedure provides that the Court must arrest judgment if "the indictment or information does not charge an offense" or "the court does not have jurisdiction of the charged offense."[2]  A defendant must file his motion to arrest judgment within 14 days after the court accepts a verdict or finding of guilty.  *See* Fed. R. Cr. P. 34(b).

Courts have held that a claim that the indictment fails to "charge an offense" includes a claim that the statute creating the offense is unconstitutional, and such a defense can be raised "at any time while the case is pending" (Rule 12(b)(3)(B)) or "within 14 days after the court accepts a verdict or finding of guilty" (Rule 34(b)).  *See United States v. Thomas*, 534 F. Supp.2d 912, 915 (N.D. Iowa 2000) (*citing United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973) and 24 *Moore's Federal Practice* § 612.04, at 612-13 (3d ed. 2002) ("The defense of failure to charge an offense may be based on . . . the unconstitutionality of the statute relied

---

[2] "Motions to arrest judgment are rarely granted."  Charles Alan Wright and Sarah N. Welling, *Federal Practice and Procedure*, § 601 (2011).  Indeed, this Court has found no case in the Eighth Circuit where a court has granted a motion to arrest judgment.

7

upon.")); *see also United States v. Milder*, 459 F.2d 801, 803 (8th Cir. 1972) (noting that a constitutional challenge to a statute "should be raised prior to, or at least during trial.") (internal citations omitted).

Thus, the Court determines that, under Rule 12(b)(3)(B) and Rule 34, it does have the authority to consider the issue of the constitutionality 18 U.S.C. § 249(a)(1) at this stage in the case. The Court now turns to that issue.

(b) In support of his motion to arrest judgment, defendant relies on the Eighth Circuit's opinion in *United States v. Bledsoe*, 728 F.2d 1094 (8th Cir. 1984). In that case, the defendant was charged with violating 18 U.S.C. 245(b)(2)(B), which makes it a crime to injure someone who is "participating in or enjoying any benefit, service, privilege, program, facility or activity provided or administered by any State or subdivision thereof" because of that person's race.

The evidence in *Bledsoe* was that the defendant had beaten a black man to death in a state park because of the man's race. The jury found the defendant guilty. On appeal, the defendant argued that 18 U.S.C. § 245(b)(2)(B) was unconstitutional because the statute applied to private action and Congress cannot reach purely private action under the Fourteenth Amendment.

The Eighth Circuit -- referencing its previous decision in *Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971) (*en banc*) which in

turn relied on *United States v. Guest*, 383 U.S. 745, 86 S. Ct. 1170, 16 L. Ed.2d 239 (1966) -- rejected the argument and held that Congress could reach purely private action under the Fourteenth Amendment.

However, the panel in *Bledsoe* went further and also concluded that the statute was constitutional under the Thirteenth Amendment, holding that "[i]t is abundantly clear that under this amendment Congress can reach purely private action." *Bledsoe*, 728 F.3d at 1097 (*citing Jones v. Mayer Co.,* 392 U.S. 409, 438-39, 88 S. Ct. 2186, 2202-03, 20 L.Ed.2d 1189 (1968)). "Nor can there be doubt that interfering with a person's use of a public park because he is black is a badge of slavery." *Id.*

To put this latter conclusion into proper context, it is useful to note that the Thirteenth Amendment to the United States Constitution contains two sections which read, in pertinent parts, as follows:

> Section 1 of the Thirteenth amendment provides that "[n]either slavery nor servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."
>
> Section 2 provides that "Congress shall have the power to enforce this article by appropriate legislation."

As mentioned in the excerpt quoted above, the Eighth Circuit panel held in *Bledsoe* that 18 U.S.C. § 245(b)(2)(B) was constitutional because "interfering with a person's use of a public

9

park because he is black is a badge of slavery." *Bledsoe*, 728 F.2d at 1097.

Defendant argues that 18 U.S.C. § 249(a)(1) is unconstitutional under *Bledsoe's* rationale because the statute punishes purely private conduct that does not involve the use of public facilities, etc., or affect interstate commerce.[3] However, defendant does not deign to address the *Bledsoe* court's Thirteenth Amendment holding.

(c)  In its response, the government chooses not to argue for the constitutionality of 18 U.S.C. § 249(a)(1) on Fourteenth Amendment grounds but, rather, asserts that it is constitutional under the Thirteenth Amendment because Congress has extensive

---

[3] The hate crimes act, 18 U.S.C. § 249(a)(1) provides that:

Whoever, whether or not acting under color of law, willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived race, color, religion, or national origin of any person–
    (A) shall be imprisoned nor more than 10 years, fined in accordance with this title, or both; and
    (B) shall be imprisoned for any term of years or for life, fined in accordance with this title, or both, if--
        (i) death results from the offense; or
        (ii) the offense includes kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill.

authority under that Amendment to prohibit racially-motivated violence -- even if such conduct does not involve the use of public facilities, etc.  In support of this argument based upon the Thirteenth Amendment, the government cites cases which have "upheld the constitutionality of another federal hate crime statute, 18 U.S.C. § 245(b)(2)(B), as valid Thirteenth Amendment legislation." (Government's Response, at 8) (*citing Bledsoe*, supra; *United States v. Sandstrom*, 594 F3d 634, 660 (8th Cir. 2010); *United States v. Nelson*, 277 F.3d 164, 175-191 (2d Cir. 2002), cert. denied, 537 U.S. 835 (2002); and *United States v. Allen*, 341 F.3d 870, 884 (9th Cir. 2003)).

The government did properly note that, in this line of cases (aptly demonstrated by *Nelson*, supra), the courts were dealing with 18 U.S.C. § 245(b)(2)(B) which, unlike the statute here under consideration [18 U.S.C. § 249(a)(1)], contains -- in addition to the one common condition (for prosecution) they share: **that the conduct occurred because of race, color, religion or national origin** -- an additional condition (for prosecution): **that the conduct occurred because the person toward whom it was directed is or has been participating in or enjoying any [public] benefit, service, privilege, program, facility or activity**.

The *Nelson* case thoroughly reviewed and discussed the history of the Supreme Court's evolving views concerning the enforcement power granted Congress by Section Two of the Thirteenth Amendment

-- noting that initially, in the *Civil Rights Cases, United States v. Stanley*, 109 U.S. 3, 20, 3 S. Ct. 18, 27 L. Ed. 835 (1883), the Court had interpreted the section as authorizing Congress to "pass all laws necessary and proper for abolishing all badges and incidents of slavery" while at the same time suggesting that the concepts "badges and incidents of slavery" might have very narrow constructions.  *Id.*, 277 F.3d at 181.  The *Nelson* court noted that, thereafter in *Hodges v. United States*, 203 U.S. 1, 51 L.Ed. 65, 27 S. Ct. 6 (1906), the Supreme Court essentially narrowed the interpretation of Section Two "quite generally" concluding in effect that the Thirteenth Amendment authorizes Congress to proscribe only private acts that actually enslave a person -- that is, that create "a state of entire subjection of one person to the will of another."  *Id.* at 182 (internal citations omitted).

The *Nelson* court further noted that, almost 60 years after *Hodges* was decided, the Supreme court expressly overruled the narrow construction of congressional power under Section Two (of the Thirteenth Amendment) epitomized by *Hodges*.  *Nelson*, 277 F.3d at 182 (*citing Jones,* 392 U.S. at 441 n. 78).

Toward the end of its discussion of the Thirteenth Amendment line of cases, the *Nelson* court said it believed those cases served to underscore the extent to which Congress's powers under Section Two of the Thirteenth Amendment extend beyond the

12

prohibition on actual slavery and servitude expressed in Section One. *Nelson*, 277 F.3d at 184. This Court concurs in that belief.

Finally, the *Nelson* court held that 18 U.S.C. § 249(b)(2)(B) required proof of both the defining features therein and noted that the presence of both features in that statute made its constitutional ruling "easier." *Nelson*, 277 F.3d at 191 n.25. However, it went on to say that it was "not holding that both (and in particular the second) of the conditions are necessary to the statute's constitutionality." *Id.* The latter observation was -- obviously -- dicta, but serves to frame the issue now before this Court: whether, absent the second "condition" (or feature as this Court has characterized it), the challenge to the statute under the Thirteenth Amendment should succeed.

This Court has found no precedential authority to support the proposition that, in order to be constitutional under the Thirteenth Amendment, a statute must include not only a requirement that the conduct sought to be prohibited be such as to constitute a "badge or incident of slavery", but also a requirement that the conduct must also involve the use of a public facility, etc.

Congress, in enacting the Matthew Shepard and James Byrd Hate Crimes Prevention Act (codified as 18 U.S.C. § 249), made findings that "slavery and involuntary servitude were enforced, both prior to and after the adoption of the 13th Amendment to the Constitution of the United States, through widespread public and private

13

violence directed at persons because of their race, color, or ancestry, or perceived race, color, or ancestry" and further stated that ". . . eliminating racially motivated violence is an important means of eliminating, to the extent possible, the badges, incidents and relics of slavery and involuntary servitude."  Act Oct. 28, 2009, P.L. 111-84, Div. E, § 4702, 123 Stat. 2835.

In *U.S. v. Morrison,* 529 U.S. 598, 607, 120 S. Ct. 1740, 1748, 146 L. Ed.2d 658, 669 (2000), the Supreme Court stated that "[d]ue respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." (citations omitted).  In *Jones, supra,* the Supreme Court stated that "[s]urely Congress has the power under the Thirteenth Amendment rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation." *392* U.S. at 440.

The United States Supreme Court has further held that "the varieties of private conduct that [Congress] may make criminally punishable or civilly remediable extend far beyond the actual imposition of slavery or involuntary servitude." *Griffin v. Breckenridge*, 403 U.S. 88, 105. 91 S. Ct. 1790, 1800, 29 L. Ed.2d 338, 350 (1971).

In light of the foregoing authorities and observations -- and in the absence of any precedential authority which would plainly

14

require or counsel this Court to hold that Congress exceeded its expansive authority under the Thirteenth Amendment when it enacted 18 U.S.C. § 249(a)(1) -- this Court is unwilling to so hold. Accordingly, under this expansive view of the Thirteenth Amendment, the Court finds that 18 U.S.C. § 249(a)(1) is constitutional and, therefore, defendant's motion to arrest judgment will be denied.

(d) In light of the foregoing holding that 18 U.S.C. § 249(a)(1) is constitutional as applied under the Thirteenth Amendment, this Court finds its unnecessary to reach the question of whether the statute is constitutional under the Fourteenth Amendment.

**IT IS THEREFORE ORDERED** that the **Motion for Judgment of Acquittal Under FRCrP Rule 29, or in the Alternative For a New Trial Under FRCrP Rule 33, and Motion for Arrest of Judgment Under FRCrP Rule 34 (Doc. 39)** is hereby **DENIED.**

**IT IS SO ORDERED.**

**/s/ Jimm Larry Hendren**
**HON. JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**