## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HARRISON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.  No. 3:11CR30006-002 |
| v. | ) | |
| | ) | |
| FRANKIE MAYBEE | ) | |

### UNITED STATES' RESPONSE TO PETITIONER'S
### MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
### CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

Comes now the United States of America, by and through the undersigned counsel,

and respectfully files its response opposing petitioner Maybee's motion under 28 U.S.C. §

2255 to vacate, set aside, or correct sentence by a person in federal custody.  Doc. No. 87.

The petitioner's motion should be denied because most of the challenges raised are

procedurally barred and because all of challenges are meritless.

I.   Relevant Procedural Background

On April 6, 2011, a six-count indictment was returned against Maybee and his co-

defendant Sean Popejoy, charging them with one count of conspiring to commit a hate crime

in violation of 18 U.S.C. § 371 and of five counts of committing a hate crime in violation of

18 U.S.C. § 249.  In compliance with 18 U.S.C. § 249, Assistant Attorney General Thomas

Perez, who had been delegated powers of certification by Attorney General Eric Holder,

certified charging petitioner Maybee with a violation of 18 U.S.C. § 249, prior to the filing of

the indictment.   See 18 U.S.C. § 249 (requiring certification by the Attorney General, or his

designee); 75 Fed. Reg. 69870-69871 (November 16, 2010) (amending 28 C.F.R. § 0 "to

delegate the Attorney General's certification authority under 18 U.S.C. 249, relating to hate

crimes, to the Assistant Attorney General for the Civil Rights Division….").

On May 19, 2011, Maybee was convicted after jury trial on all counts.

On June 2, 2011, after having orally made a motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure during trial, Maybee filed a renewed motion for judgment of acquittal, a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, and motion for arrest of judgment under Rule 34 of the Federal Rules of Criminal Procedure.  Maybee argued that the evidence was insufficient to sustain the jury's verdict, that the evidence weighed heavily against the verdict, and that 18 U.S.C. § 249 is unconstitutional.  (Doc. No. 39)  The Court rejected all of these arguments and denied Maybee's motion in all respects. (Doc. No. 41).

Maybee was sentenced on September 28, 2011, to 135 months imprisonment, three years supervised release, a $10,000.00 fine, and $5,440.00 restitution.

On October 10, 2011, defendant Maybee filed a notice of intent to appeal.  (Doc. No. 60).  On March 15, 2012, defendant Maybee filed an appeal with the United States Court of Appeals for the Eighth Circuit challenging his convictions and sentencing.  Maybee again argued that the evidence was insufficient to sustain the jury's verdict, that the evidence weighed heavily against the verdict, and that 18 U.S.C. § 249 is unconstitutional.  Maybee further argued that trial counsel provided ineffective assistance of counsel by not requesting instructions on entrapment and self defense and by failing to present character witnesses.  Maybee also raised, for the first time, cursory arguments regarding constructive amendment, variances, insufficiency of indictment and evidence, judgment, and sentencing.  The Eighth Circuit rejected defendant's arguments regarding sufficiency and weight of the evidence, and

constitutionality, and found that no plain error existed for the newly raised issues.[1]  Doc. No.

75-1.  The convictions and sentence were affirmed by the Eighth Circuit on August 6, 2012.

On September 18, 2012, defendant Maybee petitioned the Supreme Court for a writ of

certiorari.  On October 29, 2012, the Supreme Court denied Maybee's petition for writ of

certiorari. (Doc. No. 79).

II.   Statement of Facts

On June 20, 2010, at approximately 1:00 a.m., petitioner Frankie Maybee, co-

defendant Sean Popejoy, and Curtis Simer were "hanging out" in the parking lot of a Red-X

gas and convenience store in Alpena, Arkansas.  Tr. 407; see also Tr. 219, 366-367, 406-408.

They arrived in Maybee's 2001 blue, four-door, Ford F-250 pick-up truck.  Tr. 177, 366, 407.

At that time, they saw a green car occupied by several Hispanic men pull into the gas station.

Tr. 366-368, 408.  After some time, Maybee and Popejoy began taunting the victims and

yelling derogatory and racial epithets at them, including calling them "f***in' beaners" and

"wetbacks" and telling them, "You Mexicans need to go back to Mexico."[2]  Tr. 276-277,

307, 340-341, 368, 389, 410-411, 424, 435-436.  The victims did not make any statements to

Maybee and his friends or otherwise respond to them.  Tr. 278-279, 315, 341, 343, 370, 411.

As the victims left the gas station, Popejoy stepped toward the car, slapped the back trunk,

and yelled additional derogatory and racial epithets.  Tr. 223, 385, 411-412.  The car headed

westbound down Highway 412, a two-lane highway.  Tr. 129, 347, 412.

After the car drove away, Maybee, Popejoy, and Simer stood in the parking lot and

discussed driving after the Hispanic men and assaulting them.  Tr.  412-413.  They referred

---

[1]    The Eight Circuit did not address the ineffectiveness claim because these claims are only addressed on direct appeal in "exceptional cases."  Doc. No. 75-1, p. 10, fn. 3.
[2]    The trial transcript contains a profanity that is not set forth in this pleading.  All such profanities have been denoted with *** in this pleading.

to the victims in racial terms, and decided to chase after them and get into a fight.  Tr. 371-372, 414-415.  Popejoy stated:  "[l]et's go get the f***in' Mexicans."  Tr. 372.  A video taken by the security cameras at the gas station showed three young Caucasian men, including Maybee, huddled together in the parking lot for nearly a minute before they ran to Maybee's truck and drove away in the direction of the victims' car.  Tr. 221-224.

Maybee drove at a high rate of speed in pursuit of the car occupied by the five Hispanic men.  Tr. 374.  During the pursuit, Maybee and Popejoy talked to each other about physically assaulting the men in the car, and Maybee used derogatory and racial epithets to describe the Hispanic men.  Tr. 373, 414-415.

After several miles, Maybee caught up with the victims' car.  Tr. 414.  Maybee pulled the vehicle into the opposite lane and drove up next to the victims' car.  Tr. 347, 375-376.  One of the victims recognized the vehicle as the truck they saw parked at the gas station.  Tr. 347.  Popejoy leaned out of the truck window, waved a tire wrench, and yelled racial epithets and threats of physical harm to try to provoke a fight.  Tr. 288, 293, 376-377, 415-416.  The driver of the victim's car tried to get away but could not; he did not know what to do because it was the middle of the night, and they did not know where they were.  Tr. 288-290, 345.

Maybee then rammed the victims' car with the front bumper of his truck approximately three times.  Tr. 288, 291, 323, 345, 375, 417.  Eventually, Maybee used his truck to strike the car near its left rear wheel, performing what Popejoy (and others) called a "pit maneuver" to cause the driver to lose control and spin off the road.  Tr. 348, 351, 375-377, 419.  The car veered across the opposite lane of traffic, went off the road, down a ravine, crashed through a fence and into a tree, and burst into flames.  Tr. 289, 293, 301, 348-349, 378, 419-420.  According to Simer, Maybee stated that he hoped the "f***in' beaners

burn and die" so that he would not get caught.  Tr. 390.

After Maybee drove a few miles past the crash scene, he turned onto a dirt road to circle back around the accident to go home.  Tr. 379, 421.  He ended up back on Highway 412, and as he neared the crash scene he was running out of gas.  Tr. 379, 421.  Maybee pulled off the road and backed his truck up against a fence so that it was barely visible from the road.  Tr. 261, 379-380, 421.

All five car occupants -- Jeffrey Perez, Francisco Reyes, Brian Vital, Victor Sanchez, and Alejandro Gomez -- were injured.  Jeffrey Perez was the most seriously injured.  He suffered injuries to his head, ribs, and lungs, and, when he arrived at the hospital, he was paralyzed, unresponsive, and had a tube in his windpipe to assist with breathing.  Tr. 324, 447-448.  Francisco Reyes was hospitalized overnight with head injuries, a fractured spine, abrasions, and contusions.  Tr. 330-331.  The emergency room doctor who treated Reyes testified that these injuries were consistent with being thrown from a vehicle, and that the fractures were "very painful" injuries.  Tr. 330-331.

Brian Vital suffered a burn on his arm and cuts to his shoulder and the back of the head.  Tr. 303.  The burn took a month to heal and caused pain.  Tr. 304.  Victor Sanchez suffered some bumps to the side of his head, an injury to this knee, and physical pain.  Tr. 349.  Finally, Alejandro Gomez suffered numerous abrasions, lacerations, and bruises, which caused significant pain.  Tr. 399-400.  The doctor who treated Gomez testified that Gomez told her that he was injured when he was ejected from the back seat of a car that was forced off of the road by some "rednecks," and that his injuries were consistent with such an occurrence.  Tr. 398-400; see also Tr. 131.

When Joel Hand of the Carroll County Sheriff's Office reached the scene of the

crash, he believed it was a one-vehicle accident.  Tr. 132.  After speaking with the victims,

however, the investigation became that of a possible two-vehicle hit-and-run.  Tr. 132.  Hand

examined the roadway near the crash site.  Tr. 134-135.  He found taillight and lens covers

on the road approximately 150 yards before the crash site, which indicated that a vehicle

"had suffered impact on the roadway."  Tr. 135.  He also saw skid marks that indicated that

"the vehicle was sliding out of control."  Tr. 135.  Hand concluded that the burned vehicle

had been damaged by another vehicle prior to leaving the roadway.  Tr. 144.

 In addition, the Alpena Fire Department, after leaving the crash site, observed a dark

colored pick-up truck parked off the side of the road, about a tenth of a mile from the crash

scene.  Tr. 149.  Officer Hand went to investigate, and identified the truck as a four-door F-

250 Ford pick-up.  Tr. 149.  He noticed that it was not in plain sight, but was backed up

against a gate with the front of the truck facing the road; as a result, it was very difficult to

see the license plate.  Tr. 149, 160.  He also observed fresh damage on the front of the

vehicle and a "green paint transfer."  Tr. 150.  The truck was towed to the Sheriff's Office

and secured as evidence.  Tr. 150.

 On July 20, 2010, the Sheriff's Office executed a search warrant for the pickup truck

and recovered paint scrapings from the front tow hooks and bumper, and a wrench from

inside the truck.  Tr. 176-178.  An expert in comparative paint analysis testified that the

green paint on the truck's tow hooks and bumper was consistent with the green metallic

automotive paint General Motors used at a plant that made Buick LeSabres in 1995, and

therefore that it was possible that the green paint came from such a car.  Tr. 252-255.

III. Legal Standard and Analysis

    A. <u>Many of The Petitioner's Challenges are Barred Because They Were not Raised on Appeal; These Challenges are also Meritless</u>

        1. <u>The Challenges are Procedurally Barred</u>

In his motion, Maybee raises a number of new issues, which were never brought on appeal. Specifically, and construing Maybee's motion liberally, Maybee argues that: 1) the indictment should be dismissed for lack of jurisdiction because the Department of Justice failed to provide proof that his prosecution under 18 U.S.C. § 249 was certified as required; 2) that the Court committed judicial misconduct in a number of ways; 3) that the government committed prosecutorial misconduct because it should have charged him with conspiracy under 18 U.S.C. §241 instead of 18 U.S.C. § 371; and, 4) that he was prejudiced because witness Chad Hipps was not listed as witness during openings, but was called as the government's fifth witness. Doc. No. 87. All of these challenges are procedurally barred because they were not raised on appeal.

Section 2255 is a post-conviction remedy for federal prisoners which permits the prisoner to "move the court which imposed the sentence to vacate, set aside or correct the sentence upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." <u>Daniels v. United States</u>, 532 U.S. 374, 377 (2001) (internal quotations and brackets omitted). <u>See also</u> <u>Bear Stops v. United States</u>, 339 F.3d 777, 781 (8th Cir. 2003). Section 2255 is not a substitute for a direct appeal. <u>United States v. Wilson</u>, 997 F.2d 429, 431 (8th Cir. 1993). A petitioner who has failed to raise an issue in a direct appeal may not do so in a subsequent § 2255 motion. <u>See</u> <u>Jennings v. United States</u>, 696 F.3d 759, 762-63 (8th Cir. 2012) ("[A] petitioner may not raise an issue before the district court for the first time in a § 2255 motion if the issue was not presented on direct appeal from

the conviction"); <u>Matthews v. United States</u>, 114 F.3d 112, 113 (8th Cir. 1997) ("The failure to raise an issue on direct appeal acts to bar a petitioner from raising that issue for the first time in a section 2255 motion…").  To receive consideration for the otherwise defaulted issues in a §2255 motion, a petitioner must show: (1) both good cause for his failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims; or (2) that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice.  <u>See</u> <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998); <u>Matthews</u>, 114 F.3d at 113 ("This procedural default may be excused only if the petitioner can show both (1) a cause that excuses the default, and (2) actual prejudice from the errors that are asserted.") (internal quotations omitted).

Maybee does not provide the Court with a reason why he could not bring the new challenges contained in his §2255 motion in his direct appeal.  These challenges are therefore procedurally barred.

## 2.   <u>The Newly Raised Arguments are Meritless</u>

### a.   <u>Prosecution under 18 U.S.C. § 249 was Properly Certified</u>

Liberally construed, Maybee argues that the indictment should be dismissed for lack of jurisdiction because the certification requirement of 18 U.S.C. § 249 is jurisdictional.  He further argues that a court must review whether a § 249 charge was properly certified when a jurisdictional challenge is raised.

Maybee's prosecution under 18 U.S.C. § 249 was properly certified by Assistant Attorney General Thomas Perez, who was delegated these powers by Attorney General Eric Holder.  <u>See</u> Exhibit A (certification).  This is all the government need demonstrate.

Contrary to Maybee's assertions that once this challenge is raised, judicial review is

required, the certification requirement of § 249 does not require the court to peer into prosecutorial decision-making on the merits of the certification.  United States v. Jenkins, -- F.Supp. --, 2012 WL 4887389, *12 (E.D.Ky 2012) (noting that § 249 "is devoid of any provision for judicial review" and concluding that "this Court may not engage in a substantive review of the prosecution's certification"); cf. United States v. Juvenile Male J.A.J., 134 F.3d 905, 906-07 (8th Cir. 1998) (finding that certification under 18 U.S.C. § 5302 is not reviewable, listing various executive actions that are not subject to judicial review including various forms of certification).  As is clearly established by case law, charging decisions, and the rationale underlying these decisions, fall squarely within the powers of the executive branch and are not ordinarily properly scrutinized by the judicial branch.  See Wayte v. United States, 470 U.S. 598, 607-08 (1985) (noting that a prosecutor has broad discretion in deciding whether or not to bring charges, and in deciding what charges if any to bring, and acknowledging that such decisions are "ill-suited to judicial review"); United States v. Armstrong, 517 U.S. 456, 464-65 (1996) (same); Juvenile Male J.A.J., 134 F.3d at 906 (prosecutorial decision-making is not usually subject to judicial review); United States v. Beasley, 102 F.3d 1440, 1453 (8th Cir. 1996) ("[W]e note that charging decisions rest within the broad discretion of the prosecution").

The separation of powers doctrine limits judicial review of the executive branch's charging decisions.  As explained by the Supreme Court, prosecutors "have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'"  Armstrong, 517 U.S. at 464 (quoting U.S. Const. Art. II, § 3) (citing to 28 U.S.C. §§ 516 and 547).  These same separation of powers concerns  "prohibit [courts] from reviewing a prosecutor's

charging decisions absent a prima facie showing that it rested on an impermissible basis, such as gender, race or denial of a constitutional right." United States v. Palmer, 3 F.3d 300, 305 (9th Cir.1993). In recognizing the limits of judicial review in this area, courts have noted that the decision to prosecute is "administrative in nature" and is "precisely the type of task assigned to a political branch rather than to our government's neutral arbiters." United States v. Jarrett, 133 F.3d 519, 540 (7th Cir. 1998).

Whether certification requirements are judicially reviewable have been litigated with respect to other statutes. While executive branch actions are presumptively subject to judicial scrutiny, Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995), courts have generally found that certifications in the law enforcement sphere are not subject to judicial review. See Juvenile Male J.A.J., 134 F.3d 905, 906-07 (8th Cir. 1998) (collecting cases where acts of prosecutorial discretion were held to be unreviewable); United States v. Carter, 493 F.2d 704 (2d Cir. 1974) (reversing a district court for improperly reviewing a certification and noting that the "court [ ] did not simply abuse its discretion but usurped a power in making a finding which the Congress vested in the Attorney General."). The plain language of the Shepard-Byrd Act provides that the decision whether to certify the prosecution vests solely within the Attorney General or his designee.[3] Section 249 does not specifically provide for judicial review of that decision, nor does it provide any standards for the judicial branch to substantively evaluate whether certification is proper. Therefore, like other statutes requiring certification, certification under § 249 is not subject to substantial judicial review. See Jenkins, -- F.Supp. --, 2012 WL 4887389, *12.

Because this action was properly certified and because the decision to certify a matter

---

[3]   As noted above, Assistant Attorney General Tom Perez is the Attorney General's designee for certification purposes of § 249.

for prosecution under § 249 is an exercise of prosecutorial discretion that has been reserved to the executive branch, Maybee's challenge must fail.

b.   <u>The Court did not Commit Judicial Misconduct</u>

Maybee argues that the Court committed judicial misconduct for a number of reasons. First, Maybee argues that the Court committed judicial misconduct because the Court's pretrial scheduling order did not require disclosure of certification of Maybee's prosecution pursuant to § 249 and because the Court consequently failed to conduct judicial review of the certification.  As stated above, certification is not substantively reviewable by the Court. <u>Jenkins</u>, 2012 WL 4887389, *12.  Therefore, the Court did not err, much less, commit misconduct when issuing its pretrial order and when not conducting judicial review.

Maybee claims that the Court committed misconduct for a number of evidentiary reasons -- because the Court allowed physicians to testify about injuries suffered by the victims and because the Court admitted Maybee's statements into evidence.  Maybee bases these arguments in § 249, claiming that § 249 does not require injury and that it requires a stipulation from the defendant in order to admit the defendant's own statements into evidence.  Doc. No. 87, p. 12.  Again, Maybee is simply wrong.  Section 249(a)(1) explicitly states that "whoever … willfully causes bodily injury to any person or, through the use of … a dangerous weapon, … attempts to cause bodily injury to any person, because of the actual or perceived race, color, religion, or .national origin of any person" shall be guilty of an offense against the United States.  18 U.S.C. § 249.  The government charged Maybee with both theories of § 249 -- willfully causing bodily injury and attempting to cause bodily injury by use of a dangerous weapon.  Doc. No. 1.  Therefore, evidence relevant to bodily injury was properly admitted.  In addition, as the Court well knows, admission of Maybee's own

11

statements are governed by the Federal Rules of Evidence, not § 249, and § 249 does not speak to this issue.  Thus, Maybee's evidentiary arguments must fail.

Maybee also argues that the Court committed misconduct by finding that § 249(a)(1) does not have any interstate commerce requirement.  This argument was properly rejected by the Court and has also been rejected by the Eighth Circuit.  See Docs. No. 41, generally, and 75-1, p. 6.

Maybee next argues that the Court committed misconduct by failing to provide relief for "discovery violations."  Doc. No. 87, p. 12.  Maybee fails to allege what specific violations occurred, how he was prejudiced, and how this prejudice establishes that his sentence was imposed in violation of the Constitution or laws of the United States, as required for relief under § 2255.  In any case, the record clearly demonstrates that trial counsel never alleged that the government had violated its discovery duties under the Constitution or Rule 16(e).  Tr. Trans. 463-464.  Rather, trial counsel demonstrated concern that he had received discovery as recently as the week before trial.  Id.  But as the Court is well aware, discovery often continues to be generated up to and throughout trial and therefore, continues to be disclosed up to and throughout trial (e.g. as witnesses are prepared for trial, they may make inconsistent statements that must be disclosed).  In short, the government complied with its on-going discovery obligations, there were no discovery violations, none were alleged, and the Court cannot be faulted for not sua sponte raising a non-issue.  Maybee is not entitled to any relief on these grounds.

Maybee next argues that the Court committed misconduct by not giving a lesser included misdemeanor instruction.  Maybee was charged with violating §§ 371 and 249. There are no misdemeanor provisions of § 249, therefore, neither statute could have been

charged as misdemeanors in this case.  See 18 U.S.C. §§ 249 and 371.

Maybee also argues, liberally construed, that the Court committed misconduct by denying his motion for judgment of acquittal with respect to his conviction on Count One of the indictment, for violating § 371.  Doc. No 87 (alleging that the court committed misconduct "when it allowed the conviction under § 371 to stand").  Maybee alleges that § 371 was charged as a means to avoid the certification requirement of § 249 and to obtain a higher sentence against him.  This is not grounds for a judgment of acquittal.  See Fed. R. Crim. Proc. Rule 29.  Moreover, as stated above, charging decisions are generally not subject to judicial review, except in rare circumstances.  See Wayte, 470 U.S. at 607-08 (noting that a prosecutor has broad discretion in deciding whether or not to bring charges, and in deciding what charges if any to bring, and acknowledging that such decisions are "ill-suited to judicial review"); Armstrong, 517 U.S. at 464-65; Juvenile Male J.A.J., 134 F.3d at 906 (prosecutorial decision-making is not usually subject to judicial review); Beasley, 102 F.3d at 1453 ("[W]e note that charging decisions rest within the broad discretion of the prosecution").

Finally, Maybee argues that the Court committed misconduct by ordering restitution without having verified records of the victims' losses.  However, the Court properly based its restitution order upon undisputed figures provided by Probation's Pre-Sentence Investigation Report.  See Maybee PSIR; see Sentencing Tr., generally (in which defendant raised only two objections to the PSIR, none pertaining to restitution).  This is precisely what the law dictates.  See 18 U.S.C. § 3664 (providing for mechanism in which probation shall provide information to the court sufficient to order restitution and providing for additional mechanisms if any dispute arises as to the amount of restitution).  Therefore, the Court

committed no error or misconduct in ordering restitution based upon the undisputed information provided by Probation.

c.   The Government did not Commit Prosecutorial Misconduct in its Charging Decisions

Maybee raises another new challenge to his conviction and sentence here by claiming that the government committed prosecutorial misconduct because it should have charged him with conspiracy under 18 U.S.C. §241 instead of 18 U.S.C. § 371.  Maybee alleges that the government did so because it wanted to avoid the certification requirements of § 249 and because it sought a higher sentence.  Maybee is, again, simply wrong.  In addition to the above-stated discretion afforded the government with regard to charging decisions, the government also notes that a conspiracy under § 241 could not be charged in this case. Section 241 prohibits conspiracies to injure, intimidate, and oppress individuals in their enjoyment of a constitutional or federal right, such as the statutory right to housing without discrimination and the constitutional right to be free from unreasonable search and seizure. 18 U.S.C. § 241.  The government did not allege any such violation here.  Rather, the government charged Maybee with conspiring to violate § 249, which does not contain, as any element, a violation of a constitutional or federal right.  Therefore, Maybee's challenge on these grounds must be rejected.

d.   Maybee was not Prejudiced by the Failure to Read a Witness's Name at Voir Dire

Maybee next claims, liberally construed, that he was prejudiced by the fact that Chad Hipps was called as the government's fifth witness at trial, though Hipps' name was not read to potential jurors during voir dire.  Maybee utterly fails, however, to state how he was prejudiced by the omission and how that alleged prejudice could rise to the level of rendering

his sentence and conviction unconstitutional and in violation of federal law.  This challenge too must fail.

### e.   All of Maybee's Newly Raised Challenges Must Fail

Because Maybee raises a number of new challenges in his motion, these challenges are procedurally barred.  Even if not procedurally barred, these newly raised challenges must be denied as meritless.

### B.   There is no Interstate Commerce Element of 18 U.S.C. § 249

Maybee also challenges his conviction because he alleges that § 249 requires the government to establish a nexus to interstate commerce.  As stated above, this argument was properly rejected by the Court and the Eighth Circuit.  See Doc. Nos. 41 and 75-1.

### C.   Trial Counsel was not Ineffective

The remainder of Maybee's challenges can be characterized as claims of ineffective assistance of counsel.  For an ineffective assistance of counsel claim to succeed, a petitioner must meet the conditions set forth in Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Supreme Court reaffirmed that "effective" assistance of counsel is a constitutional right guaranteed to a criminal defendant.  Id. at 685.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Id.  Strickland held that an ineffective assistance of counsel claim has two components: inadequate performance by counsel, and prejudice resulting from that inadequate performance.  466 U.S. at 687-692.

The first part of the test requires that Maybee show "that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.  The governing performance standards depend in large part on the standards set by the legal profession.  Id. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").  In applying the professional norms standard, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.

Even if a petitioner satisfies the first part of the Strickland test, he is not entitled to relief unless he can also satisfy the prejudice prong by showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable."  Id. at 687.  The defendant has the burden of establishing prejudice, and it is "not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  Id. at 693.  Instead, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Maybee argues that his claim should be evaluated by a lower standard, and relies upon Lawrence v. Armontrout, 961 F.2d 113 (1997 CA8), for the proposition that "Strickland does not apply to strategic choices made in the shadow of lack of preparation or investigation."  Doc. No. 87, p. 14.  A simple reading of this case establishes that no such alternative standard exists, however.  Strickland remains the touchstone for all ineffective assistance claims.

### 1.  Trial Counsel's Performance was not Deficient

Maybee's numerous allegations of deficient performance are unfounded.  First,

Maybee alleges a number of deficiencies related to discovery.  Maybee claims that his trial

counsel proceeded to trial despite the fact that he did not receive discovery.  Doc. No. 87, pp.

3, 10.  This allegation is belied by Maybee's own pleading, in which he quotes his trial

counsel informing the Court that counsel had, in fact, received discovery.  Doc. No. 87, p. 5.

Maybee next argues that trial counsel erred by failing to ask the government for a copy of the

certification of his prosecution under § 249 and for failing to ask the Court to conduct

judicial review of the certification.  That certification is attached as Exhibit A.  It is clear

from the face of this document that having this document would not have aided Maybee's

defense in any way and it was not deficient for his counsel not to ask for it.  Trial counsel

was also not deficient for not requesting judicial review of the certification process as there

was no legal basis for requesting this invasion of the prosecutorial realm.  See Jenkins, 2012

WL 4887389, *12, and, supra discussion of judicial review.  Finally, Maybee complains that

trial counsel "failed to discover the contents of the automobile which contained drugs,

alcohol, weapons and other paraphernalia."  Again, this was not deficient on trial counsel's

part as counsel undoubtedly knew such an action to be futile, given the fact that the

automobile was completely immolated and destroyed as a result of Maybee's actions (not to

mention that there was no suggestion or evidence indicating that there was any contraband in

the victims' car).  See Exhibit B (photographs of victims' car).  In sum, all of Maybee's

discovery-related claims of ineffectiveness are meritless.

Maybee also alleges failures on the part of trial counsel to challenge the indictment.

Specifically, Maybee alleges that trial counsel was ineffective because he failed to challenge

the indictment for selective prosecution based on the charging of a § 371 conspiracy instead

of a § 241 conspiracy.  As detailed above, such a challenge would have failed as § 241 could

17

not be charged in this case.  Therefore, trial counsel was not ineffective for failing to raise it.
Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir.1994) (failure to pursue a "meritless argument cannot constitute ineffective assistance.").  Maybee also argues that trial counsel should have challenged as duplicitous, the conspiracy charged in Count One and the aiding and abetting substantive counts charged in Counts Two through Four.  Charges are duplicitous when a single count joins two or more distinct and separate offenses.  United States v. Street, 66 F.3d 969, 974 (8th Cir.1995) (citation omitted).  Conspiracy to commit an offense, and the offense itself, are two separate crimes and were charged as two separate crimes.  Thus, this motion, too, would have failed, and trial counsel was not ineffective for electing not to raise it.  Rodriguez, 17 F.3d at 226.  Liberally construed, Maybee is also arguing that the conspiracy and substantive aiding and abetting counts are multiplicitous. Multiplicity occurs when one offense is charged in more than one count; "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." United States v. Mann, 701 F.3d 274, 285 (8th Cir. 2012), quoting Blockburger v. United States, 284 U.S. 299, 304 (1932).  This challenge too must fail because each offense requires proof of some different fact -- conspiracy requiring proof of an agreement while the substantive counts require proof of actual commission of the offense.  Counsel was not ineffective for failure to raise a meritless multiplicity argument.  Rodriguez, 17 F.3d at 226.

Maybee also alleges that trial counsel was ineffective for failing to take a number of actions at trial.  As with Maybee's allegations of judicial misconduct, Maybee here alleges that trial counsel was ineffective for not objecting to the admission of medical testimony and to the admission of Maybee's own derogatory statements towards the victims.  For the same

reasons that it was not judicial misconduct to admit this evidence, it was not deficient for trial counsel not to object to the admission of said evidence.

Maybee complains that trial counsel failed to fully cross-examine government witnesses and complains that trial counsel did not ask certain questions that Maybee desired. Specifically, Maybee complains that trial counsel did not ask about Maybee's "work with search and rescue dealing with all races and character," did not ask whether medical records established that the victims had used drugs and alcohol, did not ask whether a victim bought other victims alcohol, and did not ask whether two victims were not citizens.  Trial counsel's decision not to ask these questions do not constitute deficient performance, but were strategic decisions that cannot form the basis of a successful ineffective assistance claim.  For example, questions about specific good acts to establish a defendant's good character, such as the questions sought by Maybee, had little probative value as the government only need prove that Maybee committed the charged acts because of race, NOT that Maybee was a racist.  See 18 U.S.C. §249.  Similarly, questions about the victim's citizenship status were irrelevant to the crime charged and did not negate any element of the crime. Questions about certain victims' medical records, none of whom were driving, and *possible* intoxication (and the evidence indicates only one victim had anything to drink that night), were both irrelevant and likely to repulse a jury who heard of extensive and serious injuries suffered at the hands of Maybee.  In short, Maybee now complains of sound strategic decisions made by trial counsel, not deficient performance.

Maybee alleges that trial counsel was deficient for failing to object to the government not calling two victims as witnesses.  Liberally construing this claim, Maybee is claiming that defense counsel should have asked for a missing witness charge with respect to these

two witnesses.  First, these witnesses were not solely within the power of the government.

United States v. Martinez-Figueroa, 363 F.3d 679, 682 (8th Cir. 2004) (where defendant does

not show that government had sole power to produce the witness, missing witness charge not

available), cert granted and judgment vacated on other grounds.  Maybee could have called

them as witnesses or could have asked the government to enable such calling.  No such

request was made.  Therefore, a missing witness charge would have been inappropriate.

More importantly, however, Maybee fails to establish that these witnesses would have

provided any information helpful to his case.  In fact, discovery provided to trial counsel

indicates that these witnesses would only have corroborated the other victims' testimony.  In

short, trial counsel did not perform deficiently in failing to ask for a missing witness charge

for these witnesses.

Maybee also complains that trial counsel did not call certain witnesses in the defense

case, who he claims would have been helpful to his defense.  Doc. No. 87, p. 16.  He fails,

however, to state how these witnesses would have been helpful.  For instance, Maybee

complains that trial counsel did not call a number of witnesses who were at the Red-X the

night of the incident.  At least three of these witnesses, "Ann," "Paige," and "Kelsey," left

the Red X prior to Maybee's interactions with the victims and, thus, would have little

relevant evidence to provide.  Another witness, the cashier at the Red X, was inside the gas

station and thus, would have little opportunity to view Maybee's interactions with the

victims. Maybee notes two other victims who were present at the scene, but fails to state how

these victims could have provided helpful evidence other than to say that they would have

impeached the testimony of Popejoy and Simer.  Another two witnesses listed by Maybee

were not even present at the Red X, but were merely with Maybee earlier in the night.  In

short, Maybee fails to establish that these witnesses would have been helpful in any way and that trial counsel did not make sound strategic decisions in not calling them.

The helpfulness of other witnesses Maybee claims should have been called is similarly dubious. Maybee claims that he would have called Chad Inman, the person who sold Maybee his truck to show that Inman had not been called by the police the night of this incident. This evidence was irrelevant. Maybee also claims that his attorney should have called the parole officer of victim Sanchez who would have testified as to victim Sanchez being in violation of his probation. Defense counsel tried to ask Sanchez about his violation at trial, however, and the Court properly sustained an objection to this question. Tr. Trans. at 356. Trial counsel was hardly ineffective for failing to call a witness to testify about inadmissible extrinsic evidence regarding this improper question.

Maybee also argues that trial counsel should have called: 1) a witness who owned a green Ford that was allegedly involved in a car accident with Maybee earlier in the day; 2) the owner of the property where the truck was found who would have testified that his fence was damaged by the truck; and, 3) the tow truck operator who would have testified to the condition of the vehicle. Presumably, Maybee believes these witnesses would have provided an innocent explanation, or cast reasonable doubt, as to why there was green paint on the bumper of Maybee's truck and why his truck had damage consistent with hitting the victim's car repeatedly. Other than Maybee's own conclusory statement, however, there is no evidence that these witnesses would have so testified. Moreover, this evidence would have done little to counter the overwhelming evidence that Maybee struck the victim's car with Maybee's truck -- two passengers in Maybee's truck, Popejoy and Simer, testified that Maybee purposely hit the victim's car with his truck, one of the victims recognized Maybee's

21

truck from the gas station, the paint transfer on Maybee's truck was consistent with green paint used to paint Buicks such as those owned by the victims (and there is no evidence the paint was consistent with Fords, as driven by a witness who allegedly had a car accident with Maybee), and the gas station cameras showed Maybee running to his truck and driving away in the direction of the victims.  See Statement of Facts, supra.

### 2.   Maybee Received a Fair Trial whose Result was Reliable

In any case, Maybee received a fair trial whose result was reliable, as required by Strickland.  None of Maybee's allegations amount to an actual deficiency of representation, as noted above.  Moreover, even if Maybee's allegations were true, there is nothing at all to establish that these affected the fairness of his trial, calling into question the reliability of the trial's result.  Therefore, Maybee's ineffective assistance of counsel claim must fail.

### D.   Appellate Counsel was not Ineffective

Finally, Maybee claims that his appellate counsel was ineffective for "parroting" arguments made by Maybee's trial counsel.  Doc. No. 87, p. 18.  As argued fully above, trial counsel was not ineffective and appellate counsel did not err by re-alleging arguments made by trial counsel.  Moreover, appellate counsel raised a number of new issues and vigorously represented Maybee.  If appellate counsel did not raise the issues raised by Maybee here, it is because these challenges are meritless.  Rodriguez, 17 F.3d 225, 226 (8th Cir.1994) (failure to pursue a "meritless argument cannot constitute ineffective assistance.").  In short, there was nothing deficient about appellate counsel's representation of Maybee.

IV. <u>Conclusion</u>

For the above stated reasons, the petitioner's challenges are procedurally barred, meritless, and should be denied.

Respectfully submitted,

CONNER ELDRIDGE
UNITED STATES ATTORNEY


By:     __/s/ Kyra Jenner_____
        KYRA JENNER
        Assistant United States Attorney
        kyra.jenner@usdoj.gov
        Ar. Bar No.
        414 Parker Avenue
        Ft. Smith, AR 72901
        479-783-5125

THOMAS E. PEREZ
ASSISTANT ATTORNEY GENERAL
U.S. DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION

By:     /s/ Cindy Chung_____
        CINDY CHUNG
        Trial Attorney
        cindy.chung@usdoj.gov
        950 Pennsylvania Avenue NW
        PHB 5126
        Washington, DC 20530
        Phone: (202) 305-4057

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 14, 2013, I electronically filed this pleading with the Clerk of Court using the ECF system which sent notifications to the counsel of record and further certify that I sent said pleading to the defendant at Federal Correctional Institution Pollock, P.O. Box 4050, Pollock, LA. 71467-4050.

<u>S/ Cindy Chung</u>
Cindy Chung
Trial Attorney
Dept. of Justice
Civil Rights Division
Criminal Section